UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGIA DEFILIPPO, et al., | No. 1:18-cv-00496-TLN-BAM |
| Plaintiffs, | |
| v. | **ORDER** |
| COUNTY OF STANISLAUS, et al., | |
| Defendants. | |

This matter is before the Court on two Motions to Dismiss: (1) Defendants County of Stanislaus ("County"), Birgit Fladager, Marlissa Ferreira, David Harris, Kirk Bunch, Steve Jacobson, and Cory Brown's (collectively, "County Defendants") Motion to Dismiss (ECF No. 99); and (2) Defendants City of Modesto ("Modesto") and Jon Evers's (collectively, "City Defendants") Motion to Dismiss (ECF No. 100).[1]  Plaintiffs Georgia DeFilippo and Christina DeFilippo (collectively, "Plaintiffs") oppose each motion.  (ECF Nos. 105, 106.)  Defendants filed replies.  (ECF Nos. 108, 109.)  For the reasons set forth below, the Court GRANTS in part and DENIES in part Defendants' motions.

///

---

[1]     When the Court discusses County Defendants and City Defendants together, it will refer to them collectively as "Defendants."

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 2, 2012, an individual named Korey Kauffman ("Kauffman") was reported missing.  (ECF No. 96 at 9.)  In August 2015, officers arrested a prominent criminal defense attorney named Frank Carson ("Carson") on suspicion that he was involved in an elaborate murder to hire scheme that resulted in Kauffman's murder.  (*Id.* at 2.)  Plaintiffs are Carson's wife and stepdaughter, who were also arrested and prosecuted on charges related to the murder.  (*Id.*)  Plaintiffs' claims are based on allegedly wrongful actions by Defendants in investigating, arresting, and prosecuting Plaintiffs.  (*Id.*)  The charges against Plaintiffs were ultimately dismissed after the preliminary hearing.  (*Id.* at 3.)

Plaintiffs filed the instant action on April 10, 2018.  (ECF No. 1.)  Plaintiffs filed the operative Second Amended Complaint ("SAC") on November 18, 2021, alleging various 42 U.S.C. § 1983 claims and state law claims.  (ECF No. 96 at 46–56.)  County Defendants filed a motion to dismiss on January 7, 2022, and City Defendants filed a motion to dismiss on January 10, 2022.  (ECF Nos. 99, 100.)

## II. STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court must give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

2

1    *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

2    "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

3    relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

4            Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

5    factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

6    While Rule 8(a) does not require detailed factual allegations, "it demands more than an

7    unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A

8    pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

9    elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

10   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

11   statements, do not suffice.").  Thus, '[c]onclusory allegations of law and unwarranted inferences

12   are insufficient to defeat a motion to dismiss for failure to state a claim." *Adams v. Johnson*, 355,

13   F.3d 1179, 1183 (9th Cir. 2004) (citations omitted).  Moreover, it is inappropriate to assume the

14   plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws

15   in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State*

16   *Council of Carpenters*, 459 U.S. 519, 526 (1983).

17           Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

18   facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim

19   has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

20   reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

21   680.  While the plausibility requirement is not akin to a probability requirement, it demands more

22   than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility

23   inquiry is "a context-specific task that requires the reviewing court to draw on its judicial

24   experience and common sense." *Id.* at 679.  Thus, only where a plaintiff fails to "nudge [his or

25   her] claims . . . across the line from conceivable to plausible" is the complaint properly dismissed.

26   *Id.* at 680 (internal quotations omitted).

27           If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

28   amend even if no request to amend the pleading was made, unless it determines that the pleading

could not possibly be cured by the allegation of other facts.'"  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)); *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile).  Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint." *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### III.   ANALYSIS

County Defendants move to dismiss for the following reasons: (1) Plaintiffs' claims against Fladager, Harris, and Ferreira that rely on conduct prior to April 10, 2016, are time-barred; (2) Plaintiffs' claims against Harris are time-barred; (3) Plaintiffs' third and fifth claims are time-barred; (4) Plaintiffs' claims against Fladager, Harris, and Ferreira in their roles as administrators, supervisors, or investigators are time-barred; (5) official capacity suits are redundant to the claims against the County; (6) Plaintiffs' claims against Fladager, Harris, and Ferreira in their roles as prosecutors should be dismissed; (7) Plaintiffs fail to state Fourth Amendment claims for unlawful search and seizure based on judicial deception; (8) Plaintiffs lack standing to bring retaliatory prosecution claims; (9) Plaintiffs fail to state Fourteenth Amendment claims; (10) Plaintiffs fail to state *Monell* claims; (11) Plaintiffs fail to state claims under California Civil Code § 52.1; (12) Fladager, Harris, and Ferreira are immune from liability for the acts of others pursuant to California Government Code § 820.8; and (13) statements made by district attorneys are privileged under California Civil Code § 47 and therefore cannot support Plaintiffs' defamation claims.  (ECF No. 99-1.)

City Defendants move to dismiss for the following reasons: (1) the SAC constitutes a shotgun pleading; (2) Plaintiffs fail to state malicious or retaliatory prosecution claims against Evers; (3) Evers is entitled to qualified immunity; and (4) Plaintiffs' state law claims fail as a matter of law.  (ECF No. 100.)

///

4

1       The Court will address the parties' arguments in turn.  To the extent Defendants'

2       arguments overlap, the Court addresses those arguments from both motions together.

3                   A.      <u>Shotgun Pleading</u>

4       City Defendants argue the Court should dismiss the SAC as an impermissible shotgun

5       pleading, as it did in its previous Order.  (ECF No. 100 at 13.)

6       Rule 8 requires "each averment of a pleading to be simple, concise, and direct."  *McHenry*

7       *v. Renne*, 84 F.3d 1172, 1177–78 (9th Cir. 1996) (internal quotation marks omitted).  To comply

8       with Rule 8, a complaint should clearly and fully set forth "who is being sued, for what relief, and

9       on what theory, with enough detail to guide discovery."  *Id.* at 1178.  Shotgun pleading occurs

10      when: (1) one party pleads that multiple parties did an act, without identifying which party did

11      what specifically; or (2) when one party pleads multiple claims and does not identify which

12      specific facts are allocated to which claim.  *Hughey v. Camacho*, No. 2:13-cv-02665-TLN-AC,

13      2014 WL 5473184, at *4 (E.D. Cal. Oct. 23, 2014).

14       In its previous Order, the Court dismissed the First Amended Complaint ("FAC") as a

15      shotgun pleading because Plaintiffs addressed Defendants collectively in nearly all the allegations

16      and claims.  (ECF No. 41.)  In contrast, the much-improved SAC adds considerable factual detail,

17      delineates the "wrongful acts" of each Defendant, and specifies what facts give rise to each claim.

18      (ECF No. 96.)  Although the SAC could be clearer at times, it is no longer a shotgun pleading.

19      The Court thus DENIES City Defendants' motions to dismiss pursuant to Rule 8.

20               B.      <u>Timeliness of Claims Against Fladager, Harris, and Ferreira Based on</u>

21                       <u>Conduct Prior to April 10, 2016</u>

22       County Defendants argue that claims against Fladager, Harris, and Ferreira based on

23      conduct that occurred prior to April 10, 2016, are barred by California's two-year statute of

24      limitations for personal injury actions.  (ECF No. 99-1 at 11.)  County Defendants also contend

25      tolling under California Government Code § 945.3 does not apply to Fladager, Harris, and

26      Ferreira because they are district attorneys, not peace officers.[2]  (*Id.* at 12 n.1.)  In opposition,

27

28      [2]     Federal courts apply the forum state's laws with respect to tolling of the statute of
limitations insofar as state law is not inconsistent with federal law.  *Butler v. Nat'l Cmty.*

1   Plaintiffs argue their claims based on the 2015 arrest warrant did not accrue until the charges

2   against Plaintiffs were dismissed on April 10, 2017.  (ECF No. 105 at 18.)  Plaintiffs do not

3   address County Defendants' arguments as to tolling under § 945.3.  (*See id.*)  In reply, County

4   Defendants argue Plaintiffs' judicial deception claims accrued when the underlying affidavit was

5   reasonably available — in this case, August 2015.  (ECF No. 109 at 2.)

6          County Defendants have not persuaded the Court that all of Plaintiffs' claims based on

7   conduct prior to April 10, 2016 are necessarily time-barred.  County Defendants offer only

8   conclusory arguments on this issue in their motion.  (ECF No. 99-1 at 11–12.)  For example,

9   County Defendants summarily argue that Plaintiffs' judicial deception claims, claims that County

10  Defendants supervised or participated in the investigation, and Plaintiffs' state law claims are

11  time-barred.  (*Id.*)  County Defendants do not cite case law as to accrual dates for each specific

12  claim in their motion.  (*See id.*)  In fact, the only case County Defendants cite in their reply is

13  *Klein v. City of Beverly Hills*, 856 F.3d 1276 (9th Cir. 2017), which supports the possibility that

14  Plaintiffs' judicial deception claims are timely depending on when the underlying affidavit was

15  reasonably available.  (ECF No. 109 at 2.)  On the other hand, Plaintiffs' briefing on this issue is

16  equally weak.  For instance, Plaintiffs do not cite factual allegations or make clear arguments

17  about when each claim based on Fladager, Harris, and Ferreira's conduct accrued.  (*See* ECF No.

18  105 at 18.)  Absent clear factual allegations from Plaintiffs about when each claim accrued and/or

19  any basis for tolling, the Court cannot say that Plaintiffs allege timely claims.

20         For these reasons, the Court GRANTS County Defendants' motion with leave to amend as

21  to claims against Fladager, Harris, and Ferreira based on conduct prior to April 10, 2016.

22                   C.      Timeliness of Claims Against Harris

23         County Defendants argue claims against Harris are time-barred because Plaintiffs did not

24  name Harris in this action or identify him in the complaint until the FAC was filed in May 2020

25  _____

26  *Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014).  California law statutorily tolls "[a]ny
    applicable statute of limitations for filing and prosecuting" an action for "damages against a peace

27  officer . . . based upon conduct of the peace officer relating to the offense for which the accused is
    charged, including an act or omission in investigating or reporting the offense or arresting or

28  detaining the accused."  Cal. Gov't Code § 945.3.

1    despite knowing of his existence for over three years.  (ECF No. 99-1 at 12.)  In opposition,

2    Plaintiffs argue the addition of Harris in place of a "Doe Defendant" relates back to the original

3    complaint, which was timely filed.  (ECF No. 105 at 19.)

4         When a limitations period derives from state law, Rule 15(c)(1) requires district courts "to

5    consider both federal and state law and employ whichever affords the more permissive relation

6    back standard."  *Butler*, 766 F.3d at 1200–01 ("[A] plaintiff may be entitled to the benefit of state

7    law relation back rules if those are more generous than Rule 15(c).").  Because the Court

8    concludes relation back is appropriate under the federal rule, the Court need not and does not

9    address the California rule.  For an amended complaint to relate back under Rule 15(c)(1)(C), "(1)

10   the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party

11   to be brought in must have received such notice that it will not be prejudiced in maintaining its

12   defense; (3) that party must or should have known that, but for a mistake concerning identity, the

13   action would have been brought against it."  *Id.* at 1202 (quoting *Schiavone v. Fortune*, 477 U.S.

14   21, 29 (1986)).

15        County Defendants only contest the third requirement (*see* ECF No. 99-1 at 13), that

16   Harris "knew or should have known that the action would have been brought against [him], *but*

17   *for a mistake concerning the proper party's identity*."  Fed. R. Civ. P. 15(c)(1)(C)(ii) (emphasis

18   added).  As to this requirement, the Supreme Court has clarified the "relation back under Rule

19   15(c)(1)(C) depends on what the party to be added knew or should have known, not on the

20   amending party's knowledge or its timeliness in seeking to amend the pleading."  *Krupski v.*

21   *Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010).

22        Plaintiffs argue when they discovered Harris's role in the investigation, they substituted

23   Harris for the Doe Defendants in the FAC.  (ECF No. 105 at 19.)  Plaintiffs further argue by

24   virtue of Harris's position at the County there is sufficient "community of interest" such that he

25   had notice of the action and Harris has shared an attorney with the other Defendants since the

26   filing of the original complaint.  (*Id.* at 20.)  The Court agrees with Plaintiffs that this is sufficient

27   to show Harris knew or should have known the action would have been brought against him, but

28   for Plaintiffs' mistake.  *See* Fed. R. Civ. P. 15(c)(1)(C)(ii); *Krupski*, 560 U.S. at 549 ("[A]

1    plaintiff might know that the prospective defendant exists but nonetheless harbor a

2    misunderstanding about his status or role in the events giving rise to the claim at issue, and she

3    may mistakenly choose to sue a different defendant based on that misimpression.  That kind of

4    deliberate but mistaken choice does not foreclose a finding that Rule 15(c)(1)(C)(ii) has been

5    satisfied.").

6         Accordingly, the Court DENIES County Defendants' motion to dismiss based on the

7    timeliness of adding Harris as a Defendant.

8                   D.    Timeliness of Plaintiffs' Third and Fifth Claims

9         County Defendants argue Plaintiffs' retaliatory prosecution and *Monell* claims are time-

10   barred because they were not asserted until May 2020.  (ECF No. 99-1 at 14.)  In opposition,

11   Plaintiffs argue these claims relate back to facts in the original Complaint, which was filed on

12   April 10, 2018.  (ECF No. 105 at 20.)

13        "An otherwise time-barred claim in an amended pleading is deemed timely if it relates

14   back to the date of a timely original pleading."  *Asarco, LLC v. Union Pac. R.R. Co.*, 765 F.3d

15   999, 1004 (9th Cir. 2014).  Under Rule 15(c), an amended complaint relates back when it asserts

16   a claim "that arose out of the conduct, transaction, or occurrence set out — or attempted to be set

17   out — in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).

18        Plaintiffs argue the facts and circumstances alleged in the SAC are the same as the

19   original Complaint — namely, the malicious investigation and retaliatory prosecution of Plaintiffs

20   as part of the conspiracy to frame Carson for murder.  (ECF No. 105 at 21.)  The Court has

21   reviewed the original Complaint and agrees with Plaintiffs.  In the Complaint, Plaintiffs allege

22   they were arrested and prosecuted despite a "clear lack of evidence against them" as part of a

23   conspiracy by County Defendants based on their disdain for Carson.  (ECF No. 1 at 2, 6–13, 21.)

24   Plaintiffs' allegations in the SAC are more detailed but essentially arise from the same conduct

25   alleged in the Complaint.  As such, the Court concludes the relation back doctrine applies because

26   Claims Three and Five stem from the same conduct set out (or attempted to be set out) in the

27   original Complaint. Fed. R. Civ. P. 15(c)(1)(B).

28   ///

1    Thus, the Court DENIES County Defendants' motion to dismiss based on the timeliness

2    of Claims Three and Five.

3        E.    Timeliness of Plaintiffs' Claims Against Fladager, Harris, and Ferreira as

4              Administrators, Supervisors, or Investigators

5    County Defendants argue Plaintiffs' claims against Fladager, Harris, and Ferreira as

6    administrators, supervisors, or investigators are time-barred because those claims are raised for

7    the first time in the SAC and do not relate to allegations in the FAC.  (ECF No. 99-1 at 15.)  In

8    opposition, Plaintiffs argue this theory of liability is based on the same facts pleaded in the

9    original Complaint.  (ECF No. 105 at 22.)

10   The Court agrees with Plaintiffs and concludes the relation back doctrine applies because

11   these claims against Fladager, Harris, and Ferreira arise from the same conduct alleged in the

12   original Complaint.  For example, the Complaint alleges "Ferreira acted outside her role as a

13   prosecuting attorney by acting as an investigator."  (ECF No. 1 at 11.)  The Complaint also

14   alleges that Fladager and Ferreira failed to provide adequate training and supervision of attorneys,

15   investigators, and deputies and failed to adequately discipline or retrain employees involved in

16   misconduct.  (*Id.* at 4.)  Although Plaintiffs did not allege their original claims as clearly, the

17   Court is persuaded that the claims in the SAC arise from the same conduct set out — or attempted

18   to be set out — in Complaint.  Fed. R. Civ. P. 15(c)(1)(B).

19   As such, the Court DENIES County Defendants' motion to dismiss based on the

20   timeliness of claims against Fladager, Harris, and Ferreira as administrators, supervisors, or

21   investigators.

22       F.    Official Capacity Suits

23   County Defendants argue Plaintiffs' claims against Fladager, Harris, Ferreira, Bunch,

24   Jacobson, and Brown in their official capacities should be dismissed as duplicative of claims

25   against the County.  (ECF No. 99-1 at 16.)  Plaintiffs do not respond to this argument.

26   The Court agrees with County Defendants that suits against individuals in their official

27   capacity are redundant to claims against the County.  It is appropriate to dismiss official capacity

28   suits as redundant when the municipality is also named as a defendant to the same claims arising

1  out of the same facts. *Maldonado v. City of Ripon*, No. 2:17-cv-00478-TLN-GGH, 2018 WL

2  5304820, at *5 (E.D. Cal. Oct. 24, 2018) (collecting cases).

3       Therefore, the Court GRANTS County Defendants' motion on this basis and DISMISSES

4  the official capacity claims against individual County Defendants without leave to amend.

5            G.      Claims Against Fladager, Harris, and Ferreira as Prosecutors

6       County Defendants argue claims against Fladager, Harris, and Ferreira in their roles as

7  prosecutors should be dismissed because they have Eleventh Amendment immunity and absolute

8  immunity. (ECF No. 99-1 at 16–18.) In opposition, Plaintiffs argue there is no Eleventh

9  Amendment immunity or absolute immunity for prosecutors acting as policymakers, supervisors,

10  or investigators. (ECF No. 105 at 23–24.) The Court will address each type of immunity in turn.

11       First, as to Eleventh Amendment immunity, the parties agree that state sovereign

12  immunity does not preclude claims against Fladager, Harris, and Ferreira based on conduct that is

13  administrative in nature rather than prosecutorial. *Compare Goldstein v. City of Long Beach*, 715

14  F.3d 750, 759–60 (9th Cir. 2013)) ("[The] District Attorney represents the county when

15  establishing administrative policies and training related to the general operation of the district

16  attorney's office."), *with Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1031 (9th Cir. 2000) ("[A]

17  California district attorney is a state officer when deciding whether to prosecute an individual.").

18       Plaintiffs argue their claims against Fladager, Harris, and Ferreira do not stem from their

19  roles as prosecutors, but from their roles in setting local administrative policy and failing to

20  properly train or discipline investigators. (ECF No. 105 at 23.) In the SAC, Plaintiffs allege

21  Fladager, and Harris were policymakers who ratified and supervised their employees' use of

22  fabricated evidence. (ECF No. 96 at ¶¶ 56–58.) Plaintiffs further allege Ferreira acted outside

23  her role as prosecutor by trying to intimidate a witness from participating in the preliminary

24  hearing, participating in witness interviews, and fabricating evidence. (*Id.* at ¶ 58.) To the extent

25  Plaintiffs' claims do not challenge Fladager, Harris, and Ferreira's conduct as prosecutors,

26  Eleventh Amendment immunity does not preclude such claims.

27       Second, as to absolute immunity, prosecutors are not entitled to absolute immunity for

28  claims related to administrative and investigatory conduct. Absolute prosecutorial immunity

10

1   applies only to conduct "intimately associated with the judicial phase of the criminal process."

2   *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430

3   (1976)).  In contrast, prosecutors "enjoy only qualified immunity, not absolute immunity, for

4   investigatory, administrative, or investigative functions."  *Santana v. Cnty. of Yuba*, No. 2:15-cv-

5   00794-KJM-EFB, 2016 WL 1268107, at *14 (E.D. Cal. Mar. 31, 2016).

6         In the instant case, Plaintiffs assert their claims against Fladager, Harris, and Ferreira are

7   based on allegations about how they acted outside their roles as prosecutors.  (ECF No. 105 at

8   25.)  To the extent Plaintiffs' claims hinge on administrative and investigative misconduct and not

9   prosecutorial conduct "intimately associated with the judicial phase of the criminal process,"

10  absolute immunity does not apply.  *Burns*, 500 U.S. at 48.

11        For these reasons, the Court DENIES Defendants' motion to dismiss based on Fladager,

12  Harris, and Ferreira's immunity.

13              H.     Unlawful Search and Seizure Based on Judicial Deception

14        County Defendants argue Plaintiffs fail to adequately allege their judicial deception

15  claims.  (ECF No. 99-1 at 89.)  In opposition, Plaintiffs contend they have adequately stated their

16  claims based on detailed allegations about material omissions and false statements in Plaintiffs'

17  arrest warrant.  (ECF No. 105 at 25.)

18        "[G]overnment investigators may be liable for violating the Fourth Amendment when they

19  submit false and material information in a warrant affidavit."  *Galbraith v. Cnty. of Santa Clara*,

20  307 F.3d 1119, 1126 (9th Cir. 2002).  Under this authority, "a § 1983 plaintiff must show that the

21  investigator 'made deliberately false statements or recklessly disregarded the truth in the

22  affidavit' and that the falsifications were 'material' to the finding of probable cause."  *Id.* (quoting

23  *Hervey v. Estes*, 65 F.3d 784, 790 (9th Cir. 1995)).  It is true that "a plaintiff cannot hold an

24  officer liable because of his membership in a group without a showing of individual participation

25  in the unlawful conduct."  *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002) (citing *Chuman v.*

26  *Wright*, 76 F.3d 292, 294 (9th Cir. 1996)).  However, "district courts construing the group

27  liability doctrine of *Jones* and *Chuman* have upheld [§] 1983 claims against groups of defendants

28  where the pleadings also include factual allegations sufficient to establish that individual

11

1    defendants were integral participants in the unlawful conduct." *Martinez v. City of W.*

2    *Sacramento*, No. 2:16-cv-02566-TLN-EFB, 2019 WL 448282, at *16 (E.D. Cal. Feb. 5, 2019).

3            Although Plaintiffs' allegations could be clearer, the Court agrees with Plaintiffs that the

4    allegations in the SAC support at the very least a reasonable inference that the individual

5    Defendants "made deliberately false statements or recklessly disregarded the truth in the affidavit

6    and that the falsifications were material to the finding of probable cause." *Galbraith*, 307 F.3d at

7    1126.  The SAC alleges approximately 15 specific material omissions and false or misleading

8    statements in the arrest warrant that led to Plaintiffs' arrests.[3]  (ECF No. 96 at ¶ 49.)  Further,

9    Plaintiffs allege facts specific to each Defendant sufficient to infer that each were integral

10   participants in the allegedly unlawful arrests.  (*Id.* at ¶¶ 46, 56–62.)  For example, the SAC

11   alleges Brown, the affiant, testified that the arrest warrant resulted from a "group consensus"

12   between himself, Fladager, Ferreira, Bunch, and Jacobson as to what charges to seek and what

13   facts to include in the warrant.  (*Id.* at ¶ 46.)  The SAC further alleges Defendants reviewed the

14   arrest warrant, knew it contained fabrications and omissions of exculpatory evidence, and

15   nonetheless ordered Brown to submit the warrant to a judge as part of a conspiracy to frame

16   Carson for murder.  (*Id.*)  The Court concludes these allegations are sufficient to state a claim.

17           Thus, the Court DENIES the motion to dismiss the judicial deception claims.

18                          I.      Malicious Prosecution

19           City Defendants argue there are no specific allegations tying Evers to the investigation

20   and prosecution of Plaintiffs.  (ECF No. 100 at 15.)  In opposition, Plaintiffs argue they

21   sufficiently allege facts showing Evers was an integral participant in the entire malicious

22   investigation.  (ECF No. 106 at 20.)

23           To establish a cause of action for malicious prosecution, a plaintiff must demonstrate the

24   prior action was: (1) initiated by or at the direction of the defendant and legally terminated in the

25   _____

     [3]      County Defendants make much of Plaintiffs' use of the term "search warrant" rather than

26   "arrest warrant" in paragraph 69 of the SAC.  (ECF No. 99-1 at 19.)  Plaintiffs respond that the
     use of the term "search warrant" was a typographical error that should be obvious to Defendants

27   as paragraph 69 refers to paragraph 49, which includes detailed allegations about omissions and
     false statements in the *arrest* warrant.  The Court agrees with Plaintiffs and will not address

28   Defendants' arguments related to the mistaken usage of "search warrant" in paragraph 69.

1   plaintiff's favor; (2) brought without probable cause; and (3) initiated with malice.  *Siebel v.*

2   *Mittlesteadt*, 41 Cal. 4th 735, 740 (2007).  A plaintiff must also show the defendant prosecuted

3   him "for the purpose of denying [him] equal protection or another specific constitutional right."

4   *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004).

5           With respect to the first element, Plaintiffs point to several allegations in the SAC

6   regarding Evers's role in the investigation that led to Plaintiffs' criminal prosecution.  (ECF No.

7   96 at ¶ 61.)  For example, Plaintiffs allege Evers participated in approximately 400 interviews in

8   the investigation and was one of the primary persons involved in creating the fabricated statement

9   of Robert Woody ("Woody") and in creating false statements to bolster Woody's statement.  (*Id.*)

10  Plaintiffs allege Woody's false and coerced statement was the only evidence linking Carson —

11  and Plaintiffs by extension — to the murder of Kauffman.  (*Id.* at ¶ 46.)  Plaintiffs also allege

12  Evers participated in drafting the arrest warrant with fabricated/omitted material evidence that led

13  to Plaintiffs' arrest.  (*Id.*)  Plaintiffs allege the criminal action terminated in their favor after the

14  charges were dismissed for lack of probable cause.  (*Id.* at ¶¶ 1, 79.)  With respect to the second

15  and third elements, Plaintiffs allege facts suggesting Defendants' actions were not supported by

16  probable cause and were motivated by a malicious desire to convict Carson.  (*Id.* at ¶ 60.)  Lastly,

17  Plaintiffs assert Defendants acted to deny Plaintiffs' Fourth Amendment rights.  (*Id.* at ¶ 74.)

18  While Plaintiffs' allegations could have been clearer, the Court concludes these allegations

19  provide at the very least a reasonable inference that Evers was an integral participant in the group

20  conduct and are sufficient to state a claim for malicious prosecution.  *Martinez*, 2019 WL 448282,

21  at *16; *see Usher v. City of L.A.*, 828 F.2d 556, 562 (9th Cir. 1987) (concluding the plaintiff

22  adequately stated a malicious prosecution claim based on allegations that "the defendants illegally

23  arrested him, contrived charges to justify the arrest, submitted false police reports, and initiated

24  his criminal prosecution in bad faith").

25          As such, the Court DENIES City Defendants' motion to dismiss Plaintiffs' malicious

26  prosecution claims.

27  ///

28  ///

13

J.      Retaliatory Prosecution

County Defendants argue Plaintiffs lack standing to bring First Amendment retaliatory prosecution claims and alternatively fail to state such claims.  (ECF No. 99-1 at 20.)  County Defendants add that there is no Fourth Amendment right to be free from retaliatory prosecution.  (*Id.* at 21.)  City Defendants also argue Plaintiffs fail to state claims for retaliatory prosecution because there are no allegations that Evers personally participated in the alleged constitutional violations.  (ECF No. 100 at 14.)  In opposition, Plaintiffs argue they have standing to bring First Amendment claims based on their association with Carson.  (ECF No. 105 at 28.)  Plaintiffs do not address County Defendants' arguments as to the Fourth Amendment.

At the outset, the Court agrees there is no Fourth Amendment right to be free from retaliatory prosecution.  *See Adams v. Kraft*, No. 10-CV-00602-LHK, 2011 WL 846065, at *7 (N.D. Cal. Mar. 8, 2011) (dismissing Fourth Amendment retaliatory prosecution claim based on a lack of authority that such a cause of action exists).  Plaintiffs fail to provide any authority or argument to convince the Court otherwise.  Therefore, to the extent Plaintiffs' retaliatory prosecution claims are premised on the Fourth Amendment, those claims are DISMISSED without leave to amend.

Turning to retaliatory prosecution claims under the First Amendment, such claims require "that (1) [Plaintiffs were] engaged in a constitutionally protected activity, (2) the [Defendants'] actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in [Defendants'] conduct."  *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (quotation marks and citation omitted).  To prevail on such a claim, a plaintiff must establish that the defendant's retaliatory animus was the "but-for" cause of the plaintiff's injury, "meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive."  *Nieves v. Bartlett*, 139 S. Ct. 1715, 1725 (2019).

County Defendants take issue with the fact that Plaintiffs do not allege they were personally engaged in protected speech.  (ECF No. 99-1 at 20.)  In response, Plaintiffs summarily argue that, as family members to Carson, they deserve First Amendment protection for Carson's

14

1   criticism of public officials.  (ECF No. 105 at 28).  Plaintiffs support this theory by citing one

2   paragraph in the SAC, which describes various actions taken by Carson (ECF No. 96 at ¶ 90), as

3   well as one out-of-district decision that has questionable bearing on the instant case.  (ECF No.

4   105 at 28 (citing *Lewis v. Eufaula City Bd. of Educ.*, 922 F. Supp. 2d 1291 (M.D. Ala. 2012)).

5   This is insufficient to survive a motion to dismiss.  Plaintiffs do not clearly allege that Carson's

6   actions warrant First Amendment protection, nor do they allege how such protection would

7   extend to Plaintiffs.  Because Plaintiffs fail to allege the first element of their First Amendment

8   retaliatory prosecution claims, the Court DISMISSES those claims with leave to amend and

9   declines to address Defendants' remaining arguments as to these claims.  *Capp*, 940 F.3d at 1053.

10       Accordingly, the Court GRANTS Defendants' motions to dismiss the retaliatory

11   prosecution claims, with leave to amend as to the First Amendment claims only.

12                     K.       Fourteenth Amendment

13       County Defendants argue Plaintiffs fail to state substantive due process claims under the

14   Fourteenth Amendment.  (ECF No. 99-1 at 21.)  In opposition, Plaintiffs argue they adequately

15   allege Fourteenth Amendment claims based on Defendants' deliberate fabrication of evidence and

16   withholding of exculpatory evidence.  (ECF No. 105 at 29–30.)

17       As a preliminary matter, Plaintiffs do not allege deliberate fabrication of evidence as a

18   basis for their Fourteenth Amendment claims.  (ECF No. 96 at 51–52;) *see McDonough v. Smith*,

19   139 S. Ct. 2149, 2156 (2019) (setting forth the elements of a deliberate fabrication claim); *see*

20   *also Caldwell v. City & Cnty. of San Francisco*, 889 F.3d 1105, 1112 (9th Cir. 2018) (same).

21   Rather, the factual allegations under the Fourteenth Amendment claims relate solely to the

22   withholding of exculpatory evidence.  (ECF No. 96 at 51–52.)  As such, the Court declines to

23   consider Plaintiffs' arguments about deliberate fabrication.  To the extent Plaintiffs intended to

24   allege deliberate fabrication as a basis for their Fourteenth Amendment claims, the Court will

25   give them the opportunity to clearly allege that theory in an amended complaint.

26       As it is, Plaintiffs allege "Bunch and Ferreira turned over 53 discs of previously

27   undisclosed investigative materials in 2016, more than a year after Plaintiffs' arrests and ten

28   months into the preliminary hearing."  (ECF No. 96 at 51.)  Plaintiffs allege that this evidence

included (1) a polygraph showing that a key witness was being truthful when he denied being involved in the Kauffman murder and (2) deleted footage showing drug dealers at the location where Kauffman's remains were found before information about the location was known to the public. (*Id.* at 51–52.)  Plaintiffs allege Fladager, Harris, and Ferreira acted as supervisors and investigators when the exculpatory evidence was withheld. (*Id.* at 52.)  Plaintiffs allege Georgia DeFilippo spent 50 days in jail and both Plaintiffs suffered an unusual period of confinement by being forced to sit through an unusually lengthy preliminary hearing until the charges against them were dismissed. (*Id.*)

The Ninth Circuit has recognized that where "investigating officers, acting with deliberate indifference or reckless disregard for a suspect's right to freedom from unjustified loss of liberty, fail to disclose potentially dispositive exculpatory evidence to the prosecutors, leading to the lengthy detention of an innocent man, they violate the due process guarantees of the Fourteenth Amendment." *Tatum v. Moody*, 768 F.3d 806, 816 (9th Cir. 2014).  However, the Ninth Circuit "emphasize[d] the narrowness of the constitutional rule . . ., which is restricted to detentions of (1) unusual length, (2) caused by the investigating officers' failure to disclose highly significant exculpatory evidence to prosecutors, and (3) due to conduct that is culpable in that the officers understood the risks to the plaintiff's rights from withholding the information or were completely indifferent to those risks." *Id.* at 819–20.

In the instant case, County Defendants correctly point out that Plaintiffs do not cite allegations to show Jacobson or Brown's personal participation in withholding exculpatory evidence, which warrants dismissal of these claims against those individuals.  The Court is also not convinced that Plaintiffs have adequately alleged they were detained for an "unusual length" of time.  In *Tatum*, the defendant was subject to pretrial detention for over two years because police withheld highly material evidence from prosecutors during that time.  768 F.3d at 809.  In contrast, Plaintiffs allege Georgia DeFilippo spent 50 days in jail but do not mention how long Christina DeFilippo was detained. (ECF No. 96 at 52.)  Plaintiffs instead focus on the ten-month period they had to "sit through" the preliminary hearing, without citing any authority to suggest that attending a preliminary hearing is a deprivation of liberty equivalent to a detention. (*Id.*)

16

1    Accordingly, the Court GRANTS County Defendants' motion to dismiss Plaintiffs'

2    Fourteenth Amendment claims with leave to amend.

3    L.    *Monell*

4    County Defendants argue Plaintiffs fail to state *Monell* claims.  (ECF No. 99-1 at 24.)  In

5    opposition, Plaintiffs argue they adequately allege *Monell* claims based primarily on allegations

6    about Fladager and Harris's ratification of the alleged misconduct.  (ECF No. 105 at 31.)

7    It is well-established that municipalities cannot be held liable under § 1983 for

8    unconstitutional torts of their employees based solely on respondeat superior.  *Monell v. Dep't of*

9    *Soc. Servs. of City of N.Y.*, 436 U.S. 658, 693–94 (1978).  Pursuant to *Monell*, a municipality is

10   only liable under § 1983 when its own illegal acts are a "moving force" in the constitutional

11   violation.  *Id.*  A plaintiff may assert *Monell* liability on one of three grounds: (1) a longstanding

12   practice or custom, which constitutes the "standard operating procedure" of the local government

13   entity; (2) omissions or failures to act that amount to a local government policy of deliberate

14   indifference to constitutional rights; or (3) a local government official with final policy-making

15   authority ratifies a subordinate's unconstitutional conduct.  *Clouthier v. Cnty. of Contra Costa*,

16   591 F.3d 1232, 1249–50 (9th Cir. 2010), *overruled on other grounds by Castro v. Cnty. of L.A.*,

17   833 F.3d 1060, 1070 (9th Cir. 2016).

18   Because Plaintiffs have failed to allege underlying First or Fourteenth Amendment claims,

19   Plaintiffs' *Monell* claims as to those violations are DISMISSED with leave to amend.  *See*

20   *Pastora v. Cnty. of San Bernardino*, No. EDCV211410JGBSPX, 2022 WL 2965778, at *5 (C.D.

21   Cal. May 19, 2022) ("[A] *Monell* claim cannot survive without an underlying constitutional

22   violation.").  As to the underlying Fourth Amendment claims based on judicial deception and

23   malicious prosecution, Plaintiffs allege that Fladager and Harris were final policymakers for the

24   County.  (ECF No. 96 at ¶ 105.)  Plaintiffs also allege that Fladager and Harris ratified,

25   supervised, and condoned unconstitutional policies and decision-making, including the coercion

26   of criminal defendants to give false statements against Carson and submission of deceptive

27   warrants.  (*Id.* at ¶¶ 56, 57, 70, 76.)

28   Taking these allegations in the light most favorable to Plaintiffs and drawing all

17

1    reasonable inferences in their favor, the Court concludes Plaintiffs sufficiently allege the County,

2    through final decision and policymakers, knew of and approved the alleged constitutional

3    violations.  *See Anglero-Wyrick v. Cnty. of Sonoma*, No. 21-CV-01985-SK, 2021 WL 4170677, at

4    *3 (N.D. Cal. Sept. 14, 2021) ("Whether these allegations support a *Monell* claim for ratification

5    or simply further support a claim that the County had a pre-existing policy which caused the

6    constitutional violations, Plaintiff has sufficiently alleged a *Monell* claim.").

7            Accordingly, County Defendants' motion to dismiss is GRANTED with leave to amend

8    with respect to the *Monell* claims based on violations of the First and Fourteenth Amendment and

9    DENIED with respect to the *Monell* claims based on violations of the Fourth Amendment.

10                    M.      California Civil Code § 52.1

11           County Defendants argue Plaintiffs fail to state claims under California Civil Code § 52.1

12   (the "Bane Act") because they do not allege Defendants had a "specific intent" to violate

13   Plaintiffs' constitutional rights.  (ECF No. 99-1 at 27.)  County Defendants further argue

14   Plaintiffs fail to state any factual allegations against Brown.  (*Id.*)  Lastly, County Defendants

15   argue Fladager, Harris, and Ferreira are immune from liability under California Government

16   Code § 820.8.[4]  (*Id.*; ECF No. 109 at 9.)  City Defendants argue Plaintiffs cannot state Bane Act

17   claims because they have not alleged viable § 1983 claims against Evers.  (ECF No. 100 at 19.)

18   In opposition to County Defendants' motion, Plaintiffs argue Defendants' specific intent is

19   evidenced by their continued investigation of Plaintiffs despite the lack of any evidence against

20   them.  (ECF No. 105 at 32 (citing ECF No. 96 at ¶ 45).)  In opposition to City Defendants'

21   motion, Plaintiffs argue they have sufficiently alleged that Evers participated in the constitutional

22   violations.  (ECF No. 106 at 28.)

23           The Bane Act provides a private cause of action against anyone who "interferes by threats,

24   intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the

25   _____

26   [4]      Because the Court concludes Plaintiffs fail to allege Bane Act claims, the Court need not
      and does not address whether § 820.8 applies.  The Court notes, however, that while § 820.8
27   limits vicarious liability, it is inapplicable if a plaintiff alleges facts showing a supervisory
      defendant's culpable action or inaction proximately caused the injury.  *Rodriguez v. Cnty. of Los
28   Angeles*, 891 F.3d 776, 799 (9th Cir. 2018).

1    exercise or enjoyment by an individual or individuals of rights secured by the Constitution or

2    laws of the United States, or laws and rights secured by the Constitution or laws of California."

3    Cal. Civil Code § 52.1(a).  "[T]he Bane Act does not require the 'threat, intimidation or coercion'

4    element of the claim to be transactionally independent from the constitutional violation alleged."

5    *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018).  However, the Bane Act

6    requires Plaintiffs to show that Defendants had a specific intent to violate their constitutional

7    rights.  *Id.*  "[A] reckless disregard for a person's constitutional rights is evidence of a specific

8    intent to deprive that person of those rights."  *Id.* at 1045.

9           The Court agrees with Defendants that Plaintiffs' Bane Act claims are insufficient.  In the

10   Bane Act claims, the SAC alleges "Bunch, Jacobson, and Evers used threats and coercive

11   interview tactics to secure false statements from witnesses with the intent to deprive *Carson* of his

12   constitutional rights."  (ECF No. 96 at ¶ 111 (emphasis added).)  The SAC then alleges in a

13   conclusory fashion that "Plaintiffs were subjected to threats, intimidation and coercion."  (*Id.* at ¶

14   112.)  Neither the SAC nor Plaintiffs' opposition clearly point to factual allegations suggesting

15   individual Defendants acted with the specific intent to interfere with *Plaintiffs'* rights as to each

16   purported constitutional violation, or that they did so by "threats, intimidation, or coercion."

17   *Reese*, 888 F.3d 1030 at 1040.

18          As such, the Court GRANTS Defendants' motions to dismiss Plaintiffs' Bane Act claims

19   with leave to amend.

20                  N.      California Civil Code § 47

21          County Defendants argue the Court should dismiss Plaintiffs' defamation claims based on

22   California Civil Code § 47.  (ECF No. 99-1 at 28.)  Plaintiffs oppose.  (ECF No. 105 at 33.)

23          Section 47 states in relevant part, "[a] privileged publication or broadcast is one made: (a)

24   In the proper discharge of an official duty; [or] (b) In any (1) legislative proceeding, (2) judicial

25   proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or

26   course of any other proceeding authorized by law."

27          County Defendants argue Plaintiffs' defamation claims are based on statements made at a

28   press conference announcing Plaintiffs' arrests.  (ECF No. 99-1 at 28.)  County Defendants argue

                                                      19

1   the litigation privilege set forth in § 47 applies because these statements were made in the

2   discharge of the district attorneys' official duties and were made as part of the criminal

3   prosecution.  (*Id.* at 28–29.)  Plaintiffs do not refute these points and instead argue that § 47 does

4   not apply to malicious prosecution claims and statements to the press are not privileged because

5   the press is not a participant to the proceedings.  (ECF No. 105 at 33.)

6           The briefing on this issue is subpar on both sides.  However, to the extent that Plaintiffs'

7   allegations are based on statements subject to § 47, Plaintiffs' only viable claim is one for

8   malicious prosecution.  *Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 902 (E.D. Cal. 2006)

9   (dismissing a defamation claim and stating "[t]he litigation privilege does not apply to claims of

10  malicious prosecution [which are] . . . perhaps the only exception to the absolute nature of the

11  litigation privilege"); *Oei v. N. Star Cap. Acquisitions, LLC*, 486 F. Supp. 2d 1089, 1102 (C.D.

12  Cal. 2006) ("[O]nly claims that incorporate all elements of a malicious prosecution claim are

13  exempt from operation of the litigation privilege.") (citing *Hagberg v. Cal. Federal Bank FSB*, 32

14  Cal. 4th 350, 375 (2004)).  The Court also notes that Plaintiffs fail to adequately explain why the

15  litigation privilege does not extend to statements to the press when the parties invoking the

16  litigation privilege in this case are the district attorneys.  For their part, County Defendants cite

17  various cases where courts found the litigation privilege applied to district attorney's statements

18  at press conferences and in press releases.  (ECF No. 99-1 at 28.)

19          For these reasons, the Court GRANTS County Defendants' motion to dismiss Plaintiffs'

20  defamation claims.  Although the Court is doubtful as to Plaintiffs' ability to allege proper

21  defamation claims due to § 47, the Court will give Plaintiffs an opportunity to amend.

                              O.      Qualified Immunity

23          City Defendants argue Evers is entitled to qualified immunity.  (ECF No. 100 at 18–19.)

24  In opposition, Plaintiffs argue Evers violated clearly established law because he knew or should

25  have known there was no probable cause to arrest or prosecute Plaintiffs.  (ECF No. 106 at 27.)

26          In § 1983 actions, qualified immunity "protects government officials from civil liability

27  where 'their conduct does not violate clearly established statutory or constitutional rights of

28  which a reasonable person would have known.'"  *Cunningham v. Kramer*, 178 F. Supp. 3d 999,

1    1003 (E.D. Cal. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  The doctrine

2    "gives government officials breathing room to make reasonable but mistaken judgments" and

3    "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Ashcroft v.*

4    *al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

5          In the instant case, the Court cannot conclude that qualified immunity is appropriate at this

6    stage.  Dismissal under Rule 12(b)(6) "is not appropriate unless [the court] can determine, based

7    on the complaint itself, that qualified immunity applies."  *Id.*; *see also Jensen v. City of Oxnard*,

8    145 F.3d 1078, 1085 (9th Cir. 1998).  Plaintiffs' claims involve a complex array of factual

9    allegations that, if true, may preclude City Defendants from qualified immunity.  The Court

10   concludes a determination of whether qualified immunity applies in this case should be made

11   after further development of the factual record, such as on a motion for summary judgment.

12         Therefore, the Court DENIES City Defendants' motion to dismiss based on qualified

13   immunity.

14               P.      <u>False Arrest/Imprisonment</u>

15         City Defendants argue Plaintiffs fail to allege that Evers had anything to do with

16   Plaintiffs' arrests and, alternatively, Evers is immune from liability.  (ECF No. 100 at 20–21.)  In

17   opposition, Plaintiffs argue they state a claim and Evers is not immune from liability.  (ECF No.

18   106 at 29–30.)

19         A false imprisonment claim in an arrest context arises upon "(1) the nonconsensual,

20   intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable

21   period of time, however brief."  *Easton v. Sutter Coast Hosp.*, 80 Cal. App. 4th 485, 496 (2000).

22   An officer acts "without lawful privilege" either when he arrests without probable cause, or when

23   he maliciously arrests another by personally serving an arrest warrant issued solely on

24   deliberately falsified information.  *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323

25   F.3d 1198, 1205 n.4 (9th Cir. 2003).

26         As mentioned, Plaintiffs allege Evers was part of the group that chose what charges to

27   seek and facts to include in the arrest warrant affidavit.  (ECF No. 96 at ¶ 46.)  Plaintiffs further

28   allege Evers spoke with Brown about the arrest warrant, knew it contained false and misleading

statements and omissions, and did nothing to correct it.  (*Id.* at ¶ 61.)  In addition, Plaintiffs allege

Evers used various abusive and improper interviewing techniques to coerce a false confession

from Woody and failed to disclose material information from the interview on the arrest warrant

affidavit.  (*Id.*)  These allegations are sufficient to provide at the very least a reasonable inference

that Evers was an integral participant in arresting Plaintiffs without probable cause and/or based

on an arrest warrant issued based on deliberately falsified information.  *See Blaxland*, 323 F.3d at

1205 n.4; *see also Harden v. S.F. Bay Area Rapid Transit Dist.*, 215 Cal. App. 3d 7, 15–16

(1989) ("All who take part in or assist in the commission of a false imprisonment are joint

tortfeasors and may be joined as defendants without an allegation or proof of a conspiracy.").  As

to City Defendants' immunity argument, the allegations already discussed at length support a

reasonable inference that Evers acted with malice, which would preclude immunity.  *See Harden*,

215 Cal. App. 3d at 15 ("Where the arrest is made with malice . . . no immunity attaches, whether

or not the arrest was made pursuant to warrant or legal process.").

Therefore, the Court DENIES City Defendants' motion to dismiss the false arrest/

imprisonment claims.

### Q.  Intentional Infliction of Emotional Distress ("IIED")

City Defendants argue Plaintiffs fail to allege IIED claims.  (ECF No. 100 at 21.)  In

opposition, Plaintiffs argue they have adequately alleged IIED claims.  (ECF No. 106 at 30.)

To succeed on an IIED claim, Plaintiffs must show that Defendants intentionally or

recklessly caused them to suffer "severe or extreme emotional distress" through their "extreme

and outrageous conduct."  *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009).  "A defendant's

conduct is outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a

civilized community."  *Id.* (internal quotation marks omitted).

Plaintiffs allege they have suffered severe emotional distress because Defendants,

including Evers, maliciously included false and misleading information and omitted exculpatory

information from the arrest warrant affidavit leading to Plaintiffs' prosecutions for murder.  (ECF

No. 96 at 55.)  A reasonable trier could decide the conduct alleged in the SAC was so outrageous

as to exceed all bounds of that usually tolerated in a civilized community.  *See Morse v. Cnty. of*

1   *Merced*, No. 116CV00142DADSKO, 2016 WL 3254034, at *13 (E.D. Cal. June 13, 2016)

2   (denying a motion to dismiss IIED claim where the plaintiff alleged "individual defendants

3   knowingly misrepresented information in order to arrest him and charge him with murder,

4   apparently in order to exact political retribution against plaintiff's father, a local politician who

5   had been critical of the Sheriff's Department"). While Plaintiffs admittedly could have laid their

6   allegations out more clearly within their IIED claim, the Court finds the allegations in the SAC

7   are sufficient to survive a motion to dismiss.

8        Thus, the Court DENIES City Defendants' motion to dismiss the IIED claims.

9        **IV.    CONCLUSION**

10       For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants'

11   Motions to Dismiss (ECF Nos. 99, 100) as follows:

12       1.  County Defendants' motion (ECF No. 99) is GRANTED as follows:

13            a.  GRANTED with leave to amend as to claims against Fladager, Harris, and

14                Ferreira based on conduct prior to April 10, 2016;

15            b.  GRANTED without leave to amend as to the official capacity claims

16                against individual County Defendants;

17            c.  GRANTED as to the retaliatory prosecution claims, with leave to amend as

18                to those claims brought under the First Amendment and without leave to

19                amend as to claims brought under the Fourth Amendment;

20            d.  GRANTED with leave to amend as to the Fourteenth Amendment claims;

21            e.  GRANTED with leave to amend with respect to *Monell* claims based on

22                violations of the First and Fourteenth Amendment;

23            f.  GRANTED with leave to amend as to the Bane Act claims; and

24            g.  GRANTED with leave to amend as to the defamation claims.

25       County Defendants' motion is DENIED in all other respects.

26       2.  City Defendants' motion (ECF No. 100) is GRANTED as follows:

27            a.  GRANTED as to the retaliatory prosecution claims, with leave to amend as

28                to those claims brought under the First Amendment and without leave to

amend as to claims brought under the Fourth Amendment; and

    b.   GRANTED with leave to amend as to the Bane Act claims.

City Defendants' motion is DENIED in all other respects.

Plaintiffs may file an amended complaint — *only* to cure deficiencies addressed in this Order — not later than thirty (30) days from the electronic filing date of this Order.  If Plaintiffs opt not to file an amended complaint, this action will proceed on the remaining claims in the SAC.  Defendants shall file responsive pleadings not later than twenty-one (21) days from the electronic filing date of the amended complaint, or, if Plaintiffs opt to proceed on the SAC, not later than twenty-one (21) days from Plaintiffs' deadline for filing an amended complaint.

IT IS SO ORDERED:

**DATED:  September 13, 2022**

Troy L. Nunley
United States District Judge