UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGIA DEFILIPPO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF STANISLAUS, et al.,<br><br>Defendants. | No. 1:18-cv-00496-DJC-BAM<br><br><br><br>ORDER |

This action concerns Plaintiffs' arrest and prosecution by Defendants in connection with the alleged murder of Korey Kauffman.  Plaintiffs raise a number of claims pursuant to 42 U.S.C. § 1983 and California state law based on their arrest and the investigation that preceded it.  Presently before the Court is Defendants' motion to dismiss some of the claims raised in the Third Amended Complaint. (Defs.' Mot. (ECF No. 115).)  For the reasons stated below, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

**I.      Background**

Plaintiffs are the wife and daughter of criminal defense attorney Frank Carson. Carson was arrested in 2015 on suspicion that he was involved in a murder for hire scheme that resulted in the murder of Korey Kauffman.  Plaintiffs were also arrested and charged in connection with the alleged murder but these charges were dismissed

1

by the assigned judge after a lengthy preliminary hearing. Plaintiffs claim that the arrest of Carson and Plaintiffs was the result of a conspiracy to retaliate against Carson for his actions as a defense attorney. Plaintiffs have filed the present suit against both county and city Defendants based on the alleged violations of Plaintiffs' federal civil rights as well as violations of California state law.

The Court previously partially granted Defendants' Motion to Dismiss and dismissed Plaintiffs' complaint with leave to amend. After Plaintiffs submitted a Third Amended Complaint ("TAC"), Defendants filed the present Motion to Dismiss.[1]

## II.  Legal Standard on Motion to Dismiss

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted if the complaint lacks a cognizable legal theory or if there are insufficient facts alleged under a cognizable legal theory. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019). The Court assumes all factual allegations are true and construes them in the light most favorable to the nonmoving party. *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019). A complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, the Court must "draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).

## III.  Allegations in the Complaint

In the Third Amended Complaint, Plaintiffs include dozens of pages of detailed factual allegations which can be summarized as follows: Plaintiffs Georgia DeFilippo

---

[1] The present order is one of three issued simultaneously by the Court in related cases with similar pending motions to dismiss. *See Estate of Frank Carson and Georgia DeFilippo v. Cnty. of Stanislaus*, No. 1:20-cv-00747-DJC-BAM; *Quintanar v. Cnty. of Stanislaus*, No. 1:18-cv-01403-DJC-BAM. Broadly speaking, these cases relate to the same series of events. Accordingly, the analysis in each of the Court's three orders is largely identical, except where otherwise noted.

and Christina DeFilippo, along with attorney Frank Carson, were arrested on August 14, 2015, and accused of involvement with a murder for hire scheme that resulted in the death of Korey Kauffman, who had been reported missing in April 2012.[2] (TAC at 7.) Carson was "reviled by many in law enforcement" as well as the Stanislaus County District Attorney's office ("SCDA"). (*Id.*) The murder for hire theory was based in part on the idea that Kauffman was suspected of a prior theft from Carson's property. (*Id.* at 8–9.) On April 4, 2012, shortly after Kauffman's disappearance, Defendant Kirk Bunch filed a report about a conversation with Michael Cooley, Carson's neighbor and purportedly the last person to see Kauffman alive. (*Id.* at 9.) In Defendant Bunch's report, Cooley "sought to implicate Carson, and by extension Plaintiffs" in Kauffman's death. (*Id.*) After prosecutors learned of the potential link between Carson and Kauffman's disappearance, the SCDA "[s]uddenly . . . became very interested in this missing person case." (*Id.*)

Defendants Harris and Birgit Fladager created a task force to investigate Kauffman's disappearance. (*Id.*) Defendant Fladager supervised the investigation team which included Defendants Bunch, Jacobson, Cory Brown, and Jon Evers. (*Id.* at 10.) Defendant Harris was also originally responsible for supervising these Defendants but was later replaced by Defendant Marlissa Ferreira after Defendant Harris "was accused of jury tampering and contempt of court in a case he had with Carson as [opposing] counsel." (*Id.* at 10–11.)

During the investigation, Plaintiffs were never accused by any witness of involvement in a crime. (*Id.* at 11.) Multiple other suspects were disregarded and exculpatory evidence was not disclosed to the judge who signed Plaintiffs' arrest warrants. (*Id.* at 11–15.) As part of the investigation, Defendants Bunch, Jacobson, and Evers conducted a seven-hour interrogation of Robert Woody after he was

---

[2] Plaintiffs inconsistently spell Korey Kauffman's last name "Kaufman" and "Kauffman" throughout the TAC. As the latter spelling is more commonly used in that document, the Court will use the spelling "Kauffman" in this order.

3

recorded saying he had killed Kauffman. (*Id.* at 15–16.) Defendants Bunch, Jacobson, and Evers informed Woody of the theory involving Carson and Plaintiffs and pressured Woody despite him repeatedly denying "any involvement in, or knowledge of, the Kauffman murder . . . ." (*Id.* at 16.) Woody was threatened with the death penalty and life in prison, and told he had an opportunity to implicate others in the murder. (*Id.*) During the interrogation, Woody took a 20-minute bathroom break, accompanied by Defendants Bunch and Jacobson. (*Id.* at 17.) This period was not recorded and when Woody returned, he repeated back part of the theory that Bunch, Jacobson, and Evers had told him previously: "that [Woody's] employers, Baljit Athwal and Daljit Athwal had murdered Kauffman and that they did it because they were asked by Carson to watch over his property for thieves." (*Id.*) Defendants Bunch, Jacobson, and Evers conducted several additional interviews with Woody over the next two years during which they reinforced what Woody had told them. (*Id.* at 18–22.) Woody eventually recanted his confession on April 24, 2014, and passed a polygraph stating that he had nothing to do with Kauffman's murder. (*Id.* at 22–23.)

On August 13, 2015, Defendant Brown submitted a Ramey Warrant for Plaintiffs' arrest. (*Id.* at 23.) The preparation of this warrant request was "a 'group consensus' between [Defendant Brown] and Defendants Fladager, Ferreira, Bunch, Evers, and Jacobson on what charges to seek and what facts to include (and exclude) in the warrant." (*Id.* at 23.) The ultimate warrant was a 325-page "unorganized, rambling document" that failed to establish probable cause. (*Id.* at 23–25.) The arrest warrant also contained a number of "fabrications, material omissions[,] and misleading statements." (*Id.* at 26–29.)

After Plaintiffs' arrest, Georgia DeFilippo remained in jail for fifty days and was eventually released on $4.5 million bail. (*Id.* at 29.) Christina DeFilippo was released after booking. (*Id.*) "A preliminary hearing began on October 13, 2015, and continued for 18 months, one of the longest in California history." (*Id.*) The charges
////

against Plaintiffs were eventually dismissed on April 10, 2017, by Superior Court Judge Barbara Zuniga who found that probable cause did not exist. (*Id.* at 30.)

### IV. Defendants' Motion to Dismiss

#### A. Claims That Plaintiffs Concede Should be Dismissed

As an initial matter, in response to Defendants' motion, Plaintiffs concede two categories of claims should be dismissed.

First, Defendants argue that Plaintiffs improperly brought suit against Defendants in their official capacity as the Court previously dismissed these claims as redundant to Plaintiffs' claims against Stanislaus County. (Defs.' Mot. at 3.) In their opposition, Plaintiffs concede that these official claims are improper and state they were included due to a "drafting error." (Pls.' Opp'n (ECF No. 121) at 3.) Plaintiffs state these claims are no longer being asserted by the Plaintiffs. (*Id.*) Accordingly, claims against Fladager, Harris, Ferreira, Bunch, Jacobson, and Brown in their official capacities are dismissed.

Second, Defendants argue in their motion that Defendants Fladager and Harris are not proper parties to a *Monell* municipal liability claim. (Defs.' Mot. at 9.) In the opposition, Plaintiffs also concede this point and voluntarily dismiss the claims against Fladager and Harris based on municipal liability. (Pls.' Opp'n at 3.) Accordingly, these claims are also dismissed.

#### B. Timeliness of Plaintiffs' Judicial Deception and False Imprisonment and False Arrest Claims against Defendants Fladager, Harris, and Ferreira

In their motion, Defendants argue that two sets of claims are not timely under the requisite statute of limitations: Plaintiffs' Fourth Amendment judicial deception claims against Defendants Fladager, Harris, and Ferreira; and Plaintiffs' false arrest and false imprisonment claims against these same Defendants. Plaintiffs initially contend that their claims are timely under the *Heck* rule for accrual. To the extent that these claims are not timely or the *Heck* rule does not apply, Plaintiffs argue that statutory

////

5

and equitable tolling apply. The Court will first determine the date each set of claims was accrued and then determine whether are subject to tolling.

### 1. Accrual of Claims

#### a. Fourth Amendment Judicial Deception Claims

Turning first to Plaintiffs' Fourth Amendment judicial deception claims, as these claims are brought pursuant to section 1983, the Court must apply the statute of limitations for personal injury of the state in which the claim arose. *Alameda Books, Inc. v. City of Los Angeles*, 631 F.3d 1031, 1041 (9th Cir. 2011) In California, there is a two-year statute of limitations for personal injury actions. *See* Cal. Civ. Proc. Code § 335.1. Plaintiffs do not dispute that this is the proper statute of limitations but instead contend that these claims are timely under the *Heck* rule, as well as being subject to statutory and equitable tolling. (Pls.' Opp'n at 4-8.)

Pursuant to the rule expressed by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994), individuals are not permitted to recover damages via section 1983 "for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless the plaintiff proved that "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . ." *Id.* at 486–87. Where there are ongoing state court proceedings, the resolution of which are required to satisfy the *Heck* rule, the Supreme Court has held that the cause of action "accrues only once the underlying criminal proceedings have resolved in the plaintiff's favor." *McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019). However, accrual occurs "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (citations omitted). To determine whether a plaintiff has a complete and present cause of action, the Court must look to the analogous common law tort to determine when the cause of action accrued. *Id.*

While most Fourth Amendment violations accrue when "the wrongful act occurs," *Belanus v. Clark*, 796 F.3d 1021, 1026 (9th Cir. 2015), the Ninth Circuit has clarified that "judicial deception" claims accrue differently owing to the need for the party to be able to view the affidavit supporting a warrant before pursuing an action on these grounds. *Klien v. City of Beverly Hills*, 865 F.3d 1276, 1279 (9th Cir. 2017). As such, the Court is required to apply the discovery rule which "requires that judicial deception claims begin accruing when the underlying affidavit is reasonably available." *Id.*

Here, accrual of Plaintiffs' deception claims would be at the point that the affidavit underlying the warrant for Plaintiffs' arrest was available. Both parties agree that this occurred in 2015.[3] (Defs.' Mot. at 3; Pls.' Opp'n at 4 n.1.) As Plaintiffs' judicial deception claims would have accrued at this point, Plaintiffs' claims are not saved by the *Heck* rule as Plaintiffs did not file the present action until April 10, 2018. Thus, unless Plaintiffs' judicial deception claims are tolled, they are not timely.

### b. False Arrest/Imprisonment Claim

Turning next to Plaintiffs' sixth cause of action for false arrest and false imprisonment, this claim was brought under California Government Code sections 820, 820.4, and 815.2, not section 1983. As such, it is subject to the rules for accrual for the cause of action under state law. *See Jones v. City of Los Angeles*, No. 05-cv-01778-DSF, 2006 WL 8434718, at *8–9 (C.D. Cal. Jan. 5, 2006).

Under California law, false arrest and imprisonment claims are subject to a one-year statute of limitations.[4] Cal. Civ. Proc. Code § 340; *Bulfer v. Dobbins*, No. 09-cv-1250-JLS-POR, 2011 WL 530039, at *13–14 (S.D. Cal. Feb. 7, 2011) ("Plaintiff's false

---

[3] Plaintiffs attempt to introduce some ambiguity as to when the arrest warrant was available, suggesting in their Opposition that "it *may* have become reasonably available to Plaintiffs sometime after October 2015." (Opp. at 4, n. 1 (emphasis in original).) That ambiguity, however, is inconsistent with the allegation in the operative complaint that the entire warrant was released online following the press conference announcing the charges. (TAC at ¶ 50.)

[4] As these are claims against government employees, they are also subject to the limitations of the California Tort Claims Act in addition to the statute of limitations. Compliance with the California Tort Claims Act as to these claims is addressed separately below.

arrest claim is barred by the one-year statute of limitations applicable to false imprisonment claims."); *see Milliken v. City of South Pasadena*, 96 Cal. App. 3d 834, 840 (1979) (stating false arrest and imprisonment are subject to a one-year statute of limitations pursuant to section 340). Though a false arrest and imprisonment claim may arise at the time of arrest, in California "the statute of limitations [does] not commence to run until [plaintiff's] discharge from jail." *Milliken*, 96 Cal. App. 3d at 840.

Under these rules, Plaintiffs' false arrest and imprisonment claims would have begun to run on the date each Plaintiff was released from custody – October 4, 2015, for Plaintiff Georgia, and on August 14, 2015, or shortly thereafter, for Plaintiff Christina. As such, this action was filed well beyond the one-year statute of limitations for these sorts of claims. The *Heck* accrual rules are also inapplicable to these claims as *Heck* is specific to actions brought under section 1983. *See Heck*, 512 U.S. at 486–87; *see also Jones v. City of Los Angeles*, No. 05-cv-1778-DSF, 2006 WL 8434718, at *8 (C.D. Cal. Jan. 5, 2006) (distinguishing California state law false arrest claims from section 1983 claims).

Accordingly, Plaintiffs' false arrest/imprisonment claims against Defendants Fladager, Harris, and Ferreira are untimely unless statutory or equitable tolling is applicable.

**2. Statutory Tolling**

Plaintiffs argue that their judicial deception claims as well as their false arrest and imprisonment claims should also be subject to statutory tolling under California Government Code section 945.3. (Pls.' Opp'n at 5.) Defendants contend that this statute is not applicable to Defendants Fladager, Harris, and Ferreira as they are not "peace officers" within the meaning of this statute. (Defs.' Reply (ECF No. 123) at 3–4.)

"For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is

inconsistent with federal law." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). Section 945.3 provides that a defendant in a criminal action may not bring a civil suit "against a peace officer or the public entity employing a peace officer based upon conduct of the peace officer relating to the offense for which the accused is charged . . . . while the charges against the accused are pending before a superior court." Cal. Gov't Code § 945.3. Section 945.3 further tolls these civil claims "during the period that the charges are pending." *Id.* Whether this statute properly applies to Defendants Fladager, Harris, and Ferreira depends on whether these Defendants, who are all employed as attorneys by the SCDA (TAC at ¶ 67), are properly considered "peace officers" under section 945.3. Defendants suggest that this Court apply the definition of "peace officer" found within California Penal Code section 830.1(a). (Defs.' Reply at 3.) Plaintiffs argue that the definition provided by Penal Code section 830.1(a) is not meant to apply to Government Code section 945.3 as the latter statute makes no reference to Penal Code section 830.1(a). (Pls.' Opp'n at 6.) Plaintiffs also oppose on the grounds that, within the "plain meaning" of section 945.3, Defendants Fladager, Harris, and Ferreira are peace officers, regardless of the "literal language" of the statute. (*Id.* at 5–6.)

Other courts in this district have previously declined to apply section 954.3 to one of these three Defendants, Defendant Fladager, based on the same conduct on the grounds that "[p]rosecutors are not considered 'peace officers' under state law." *Athwal v. Cnty. of Stanislaus*, No. 1:15-cv-00311-TLN-BAM, 2022 WL 4237713, at *4 (E.D. Cal. Sep. 14, 2022); *see also Wells v. Cnty. of Stanislaus*, 1:20-cv-00770-TLN-BAM, 2022 WL 4237538, at *4. The Court reaches a similar conclusion here. Courts have consistently looked to section 830.1(a) when determining whether an individual is a peace officer for the purposes of applying section 945.3. *See Pontillo v. Stanislaus Cnty.*, 1:16-cv-01834-DAD-SKO2017 WL 3394126, at *5 (E.D. Cal. Aug. 8, 2017); *Webster v. Cnty. of Los Angeles*, No. 12-cv-656-ODW-MRW, 2012 WL 2071781, at *2 (C.D. Cal. June 6, 2012) *report and recommendations adopted by* 2012 WL 2071765

9

(C.D. Cal. June 7, 2012); *Kelley v. Allen*, 2:10-cv-00557-GEB-DAD, 2011 WL 5102994, at *2 (E.D. Cal. Oct. 26, 2011). Section 830.1(a) does not designate an attorney employed an attorney employed in the office of a district attorney as a peace officer. Cal. Pen. Code § 830.1(a); *See Athwal*, 2022 WL 4237713, at *4; *Wells*, 2022 WL 4237538, at *4. Additionally, though section 830.1(a) does provide that investigators for a district attorney's office are peace officers, this only applies to "an inspector or investigator *employed in that capacity*" by the office. Neither party contends that Defendants Fladager, Harris, and Ferreira were employed as investigators and, though Plaintiffs have claimed that these Defendants were *acting* as investigators, section 830.1(a) plainly only identifies as a peace officer those officially *employed* as an investigator by a district attorney's office.

Plaintiffs suggest that this Court should consider Defendants Fladager, Harris, and Ferreira to be peace officers as failing to do so would defeat the plain purpose of section 945.3. (Pls' Opp'n at 5–6.) In support of this contention, Plaintiffs rely on *Cross v. City & Cnty. of San Francisco*, 386 F. Supp. 3d 1132 (Cal. N.D. 2019). The court in *Cross* determined that they needed to go beyond the plain meaning of section 945.3 in order to properly apply the statute in line with its purpose. *Id.* at 1143-44. The concern in *Cross* was with the term "superior court" and whether it should be read as a reference to any trial court, regardless of the name of the court. *Id.* at 1144–45. In reaching its decision, the Court relied heavily on the legislative history of section 945.3, which clearly showed that the California legislature intended the statute to apply to criminal actions in any trial court. *Id.* at 1144–45.

By contrast, Plaintiffs here have not provided any evidence that the current definition of a peace officer does not align with the California legislature's intent. Moreover, unlike the term "superior court", there does appear to be any sort of ambiguity regarding how "peace officer" is to be defined under California law. Section 830.1 provides a detailed list of individuals to be considered peace officers and, as noted by Plaintiffs, the California legislature has not hesitated to update this

list to cover the exact individuals they wish to be covered.  (*See* Pls.' Opp'n at 6 (listing various changes to the individuals covered by section 830.1).)  Other sub-sections of the California Penal Code even expressly differentiate between peace officers as defined by Section 830.1 and "[an] attorney employed by . . . a county office of a district attorney . . . ."  Cal. Pen. Code § 832.9.  There is no indication that Defendants Fladager, Harris, and Ferreira should properly be considered peace officers for purposes of section 945.3.  For this Court to make this decision would be to override what appears the California Legislature's clear decisions about who is, and is not, a peace officer under California law.

Accordingly, statutory tolling under California Government Code section 954.3 does not apply to Plaintiffs' claims against Defendants Fladager, Harris, and Ferreira as those Defendants are not peace officers within the meaning of California law.

### 3. Equitable Tolling

Plaintiffs argue in the alternative that equitable tolling should apply to Plaintiffs' claims of false imprisonment/arrest and judicial deception against Defendants Fladager, Harris, and Ferreira. (Pls.' Opp'n at 7.)

As noted above, in section 1983 actions, the Court applies the forum state's statute of limitations for personal injury actions, including the state's equitable tolling law so long as it is consistent with federal law.  *Jones*, 393 F.3d at 927.  Equitable tolling is applied by California courts where it is necessary "to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice."  *Id.* at 928 (citations omitted) (citing *Lantzy v. Centex Homes*, 31 Cal. 4th 363 (2003)).  "Under California law, a plaintiff must meet three conditions to equitably toll a statute of limitations: (1) defendant must have had timely notice of the claim; (2) defendant must not be prejudiced by being required to defend the otherwise barred claim; and (3) plaintiff's conduct must have been reasonable and in good faith."  *Fink v. Shedler*, 192 F.3d 911, 916 (9th Cir. 1999) (citation omitted).

////

Despite Plaintiffs' arguments to the contrary, this claim fails at the first requirement. Relying on *McDonald v. Antelope Valley Community College District*, 45 Cal. 4th 88 (2008), Plaintiffs argue that Defendants were given adequate notice of the claim and are not prejudiced by defending the claim here since the Defendants were "involved in the investigation and the events leading to the initiation of the criminal proceeding." (Pls.' Opp'n at 7.) In *McDonald*, the California Supreme Court held that a claim under the state's Fair Employment and Housing Act was equitably tolled while the plaintiff voluntarily pursued an internal administrative procedure. *Id*. at 96. The Court observed that the "filing of an administrative claim, whether mandated or not, affords a defendant notice of the claims against it so that it may gather and preserve evidence, and thereby satisfies the principal policy behind the statute of limitations." *Id*. at 102.

The equitable tolling identified in *McDonald* does not apply here. *McDonald* considered several circumstances where this type of equitable tolling might apply: "where one action stands to lessen the harm that is the subject of a potential second action; where administrative remedies must be exhausted before a second action can proceed; or where a first action, embarked upon in good faith, is found to be defective for some reason." *Id*. at 100. None of these factors are present here. Plaintiffs were the subject of the underlying criminal action; it did not involve Plaintiffs themselves pursuing one of several legal remedies. *Compare id.* ("Broadly speaking, the doctrine applies when an injured person has several legal remedies and, reasonably and in good faith, pursues one.") (internal citations and quotations omitted). Plaintiffs point to no case applying equitable tolling to a second suit where the first suit involved a criminal complaint against Defendants who were plaintiffs in a later civil suit.

Even if the doctrine theoretically applied, the other requirements for equitable tolling are not met in this case. Plaintiffs suggest that Defendants had timely notice of the claims in this case as they were "all intimately involved in the investigation and the

12

events leading to the initiation of the criminal proceeding." (Pls.' Opp'n at 7.) Defendants' involvement in the criminal action against Plaintiffs holds no bearing on whether they were put on notice of Plaintiffs' claims. The claims present in the first case were criminal charges against Plaintiffs; nothing about this prior action or the claims involved would put Defendants on notice of the claims brought here. This is not a situation "where a defendant in the second claim was alerted to the need to gather and preserve evidence by the first claim even if not nominally a party to that initial proceeding." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 n.3 (9th Cir. 1993). As such, equitable tolling is not applicable to Plaintiffs' criminal proceedings as Defendants Fladager, Harris, and Ferreira were not given timely notice of Plaintiffs' claims in those proceedings. *See Fink*, 192 F.3d at 916.

Given the above, Defendants' motion to dismiss as untimely Plaintiffs' Fourth Amendment Judicial Deception claims as well as Plaintiffs' false imprisonment and arrest claims as to Defendants Fladager, Harris, and Ferreira is granted.

### C. Failure to Comply with the California Tort Claims Act

Defendants also argue that Plaintiffs' false arrest and false imprisonment claims are barred by a failure to comply with the California Tort Claims Act ("CTCA"). Parties bringing a suit for monetary damages against a public entity under California law must first comply with CTCA which requires "the timely presentation of a written claim and the rejection of the claim in whole or in part." *Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995); *see Creighton v. City of Livingston*, 628 F. Supp. 2d 1199, 1225 (E.D. Cal. 2009). Failure to comply with the CTCA bars a party from bringing the relevant state law claims. *Creighton*, 628 F. Supp. 2d at 1225. The complaint need not only plead compliance with the CTCA but also "allege facts demonstrating or excusing compliance with the claim presentation requirement. Otherwise, his complaint ... fail[s] to state facts sufficient to constitute a cause of action." *Id.* (citations omitted). Personal injury claims are required to be presented within six months of the accrual of the cause of action. Cal. Gov't Code § 911.2.

Plaintiffs' false arrest and imprisonment claims against Defendants Fladager, Harris, and Ferreira accrued at the time Plaintiffs were released from jail. *Milliken*, 96 Cal. App. 3d at 840. Plaintiffs state that they filed claims, in compliance with section 911.2, on October 3, 2017. (TAC at 48.) This is substantially more than six months after Plaintiffs' claims accrued upon their release from county jail in 2015.

Plaintiffs' failure to present their claims is likely moot as a result of the Court's finding above that Plaintiffs' false imprisonment and arrest claims against Defendants Fladager, Harris, and Ferreira are untimely. However, to the extent those claims are not untimely, based on the allegations in the TAC Plaintiffs have also failed to comply with the CTCA. *See* Cal. Gov't Code § 911.2. Accordingly, Defendants' motion to dismiss Plaintiffs' false imprisonment and arrest claims against Defendants Fladager, Harris, and Ferreira on these grounds is also granted.

### D. Prosecutorial Immunity under Cal. Gov't Code § 821.6

Defendants ask that the Court dismiss Plaintiffs' claims for intentional infliction of emotional distress and violation of California Civil Code section 52.1 on the basis of Defendants' alleged prosecutorial immunity under California Government Code section 821.6. This provision provides immunity to liability for public employees where the injury was "caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov't Code § 821.6. This immunity does not extend to "liability for false arrest or false imprisonment" as such confinement is unlawful or without process. *Bolbol v. City of Daly City*, 754 F. Supp. 2d 1095, 1118 (N.D. Cal. 2010). This exception to section 821.6 applies to other claims that are based on a false arrest or imprisonment. *Cousins v. Lockyer*, 568 F.3d 1063, 1071 (concluding section 821.6 was inapplicable not only to a false imprisonment claim but also to "related state causes of action"); *see also Bolbol*, 754 F. Supp. 2d at 1119 (applying this rule to a Bane Act claim); *Warren v. Marcus*, 78 F. Supp. 3d 1228, 1250 (N.D. Cal. 2015) (denying section 821.6 immunity for intentional

infliction of emotional distress claims based on a wrongful detention). Defendants argue that Plaintiffs' claims are not solely predicated on false arrest and imprisonment so this exception to section 821.6 immunity should not apply. Plaintiffs argue that doing so at this stage would be premature as the Court has not yet found that there was probable cause to justify the arrest.

Plaintiffs' claims are closely related and intertwined with their alleged false arrest and false imprisonment. Defendants may be correct that this is not the sole basis for Plaintiffs' intentional infliction of emotional distress and Bane Act claims. However, as alleged, Plaintiffs' claims all stem from their eventual alleged false arrest and imprisonment. Moreover, the fifth cause of action for a violation of the Bane Act expressly mentions Plaintiffs' arrest (TAC ¶ 120), as does the seventh cause of action for intentional infliction of emotional distress (TAC ¶¶ 141, 142). At this stage of the proceedings, attempting to extricate the portions of those claims that do not involve Plaintiffs' false arrest – if there are any – would require detailed factual determinations that are not appropriate and cannot be made at this stage. Though the Court may still determine that Defendants are entitled to section 821.6 immunity at a later stage of these proceedings, based on the allegations present in the TAC, the Court does not find that Defendants Fladager, Harris, and Ferreira are entitled to section 821.6 immunity as to Plaintiffs' claims for intentional infliction of emotional distress and violation of California Civil Code section 52.1 at this stage of these proceedings.

### E. Plaintiffs' Fourteenth Amendment Claim as to Defendants Fladager, Harris, and Ferreira

The third cause of action in Plaintiffs' TAC is brought under section 1983 for violation of Plaintiffs' Fourteenth Amendment rights. (TAC at 52–54.) Plaintiffs claim that Defendants Fladager, Harris, Ferreira, Bunch, Jacobson, Evers, and Brown violated Plaintiffs' due process rights by fabricating evidence against them, resulting in both Plaintiffs being arrested and Plaintiff Georgia being held in jail for fifty days. (*Id.* at 54.) Defendants move to dismiss these claims as to Defendants Fladager, Harris,

15

and Ferreira on the grounds that Plaintiffs have failed to state a cognizable Fourteenth Amendment claim as to these Defendants.

A Fourteenth Amendment fabrication of evidence claim, sometimes called a *Devereaux* claim, is a claim that "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001) (en banc); *See Spencer v. Peters*, 857 F.3d 789, 793 (9th Cir. 2017). To state a *Devereaux* claim, the violation of due process must result in a deprivation of liberty and the plaintiff must show that "(1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer*, 847 F.3d at 798 (citation omitted). A plaintiff must establish the second causal element by proving "that (a) the act was the cause in fact of the deprivation of liberty, meaning that the injury would not have occurred in the absence of the conduct; and (b) the act was the 'proximate cause' or 'legal cause' of the injury, meaning that the injury is of a type that a reasonable person would see as a likely result of the conduct in question." *Id.*

Defendants initially argue that Defendants Fladager, Harris, and Ferreira are entitled to prosecutorial immunity as to these claims. Plaintiffs' Fourteenth Amendment claims as to Defendants Fladager, Harris, and Ferreira appear to span a large time period and concern a number of different alleged acts. To the extent these allegations concern these Defendants' preparation of the arrest warrant application, actions during preliminary hearings, and disclosure of discovery, these actions are squarely within the protection of absolute prosecutorial immunity as they are "intimately associated with the judicial phase of the criminal process." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 912 (9th Cir. 2012); *see Burns v. Reed*, 500 U.S. 478, 492 (1991) (holding that a prosecutor was granted absolute immunity for the presentation of evidence in support of a search warrant at a probable cause hearing); *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997) (holding that a prosecutor's activities in

preparing and filing charging documents are protected by absolute immunity); *Broam v. Bogan*, 320 F.3d 1023, 1030 (9th Cir. 2003) (finding that a prosecutor's decision not to turn over exculpatory material before, during, or after trial was "an exercise of the prosecutorial function and entitles the prosecutor to absolute immunity from a civil suit for damages.").

However, Plaintiffs' Fourteenth Amendment claims also extend well before the filing of charging documents and concern their conduct during the investigation into Kauffman's disappearance. (*See* TAC at 31-35.) For example, Plaintiffs allege that these Defendants "advised the officers and investigators throughout the investigation" and that they acted outside their role as prosecutors during the investigation by interviewing witnesses, coercing testimony, fabricating evidence, and otherwise supervising the investigation. (*See id.*) These alleged acts appear to be outside the judicial phase of the criminal process and are not covered by the absolute immunity provided to prosecutors. *See Lacey*, 693 F.3d at 912 ("prosecutors are not necessarily immune for actions taken outside this process, including actions logically—though not necessarily temporally—prior to advocacy, such as those 'normally performed by a detective or police officer,' like gathering evidence, and those separate from the process, like providing legal advice to the police.") As the Ninth Circuit has noted, "[d]etermining what functions are prosecutorial is an inexact science." *Id*. While it is possible that Defendants Fladager, Harris, and Ferreira are entitled to prosecutorial immunity as to the entirety of Plaintiffs' Fourteenth Amendment claims, at this stage, the Court must take as true the allegations within the complaint. *Steinle*, 919 F.3d at 1160. Under this standard, Plaintiffs' allegations as to Defendants Fladager, Harris, and Ferreira's involvement in the investigation are sufficient to conclude that they are not entitled to prosecutorial immunity for at least some of their alleged actions.

Defendants more broadly contend that Plaintiffs' claims regarding the withholding of evidence are insufficient as the Court previously determined that Plaintiffs did not adequately allege they were detained for an "unusual length of time"

and because Plaintiffs have failed to allege facts to support a supervisor liability theory as to the withholding of evidence. (Defs.' Mot. at 7–8.) The Court does not need to reach these issues here as the withholding of evidence during pretrial proceedings is plainly covered by prosecutorial immunity, as determined above. *Broam*, 320 F.3d at 1030.

Accordingly, the Court grants Defendants' motion to dismiss Plaintiffs' Fourteenth Amendment claims against Defendants Fladager, Harris, and Ferreira as to any acts that occurred during the judicial phase of criminal proceedings including the preparation of the arrest warrant, the withholding of evidence during pretrial proceedings, and any actions they took as a prosecutor in connection with preliminary proceedings. However, the Court denies Defendants' motion to dismiss these claims as they relate to the involvement of Defendants Fladager, Harris, and Ferreira in the earlier three-year investigation that, at this stage, appears to fall outside of prosecutorial immunity.

### F. Plaintiffs' Bane Act Claims

In Defendants' motion to dismiss, Defendants argue that Plaintiffs have failed to state a cognizable Bane Act claim under California Civil Code section 52.1 against all Defendants as Plaintiffs have not alleged that any Defendant acted with specific intent to violate Plaintiffs' constitutional rights. (Defs.' Mot. at 8–9.) Plaintiffs contend that they have satisfied the specific intent element through allegations of threats, intimidation, and coercion by each Defendant and the claim that the Defendants were involved in a conspiracy to deny Plaintiffs' rights. (Pls.' Opp'n at 16–17.)

Taking the allegations in the TAC as true, the Court finds Plaintiffs have alleged sufficient facts to support that Defendants acted with specific intent to violate Plaintiffs' constitutional rights. The Bane Act provides a private cause of action against anyone who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by an individual or individuals of rights secured by the Constitution or laws of the United States, or laws

18

and rights secured by the Constitution or laws of California." Cal. Civil Code § 52.1(a). Plaintiffs are correct that "a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (internal citations and quotations omitted). The complaint, as currently formulated, clearly asserts facts to support the claim that Defendants acted with reckless disregard to Plaintiffs' constitutional rights. Specifically, Plaintiffs allege that Defendants prepared and requested arrest warrants for Plaintiffs despite knowing the evidence to support such an arrest was insufficient. Plaintiffs further allege that Defendants did this in order to coerce Plaintiff into fabricating evidence implicating Carson in furtherance of their plan of retaliation against him. (TAC at ¶¶ 124–125.) At this stage of these proceedings, these allegations are sufficient to show that Defendants acted with reckless disregard to Plaintiffs' right to be free from unreasonable seizure. *Reese*, 888 F.3d at 1043. Accordingly, Defendants' motion to dismiss these claims is denied.

## CONCLUSION

This is an unusual case. The Court is cognizant of the fact that a Superior Court Judge dismissed the underlying criminal charges as to the Plaintiffs in this action, which necessarily lends support to the allegations in the Complaint, making them more "plausible on their face" than they might have otherwise been. *Cf. Iqbal*, 556 U.S. at 678. Whether Plaintiffs will be able to produce sufficient evidence to support those allegations in order to survive summary judgment or prevail at trial is of course a question to be left for another day.

In accordance with the above and good cause appearing, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (ECF No. 115) is GRANTED IN PART and DENIED IN PART as follows:

1. Defendants' Motion to Dismiss claims against Fladager, Harris, Ferreira, Bunch, Jacobson, and Brown in their official capacity is GRANTED;
2. Defendants' Motion to Dismiss the *Monell* claims against Fladager and

|   |   |
|---|---|
| 1 | Harris is GRANTED; |
| 2 | 3. Defendants' Motion to Dismiss Plaintiffs' Judicial Deception, False Imprisonment, and False Arrest Claims against Defendants Fladager, Harris, and Ferreira as untimely is GRANTED; |
| 5 | 4. Defendants' Motion to Dismiss Plaintiffs' False Imprisonment and False Arrest Claims against Defendants Fladager, Harris, and Ferreira for failure to comply with the California Tort Claims Act is GRANTED; |
| 8 | 5. Defendants' Motion to Dismiss claims against Defendants Fladager, Harris, and Ferreira for intentional infliction of emotional distress and violation of California Civil Code § 52.1 on the basis of immunity under Cal. Gov't Code § 821.6 is DENIED; |
| 12 | 6. Defendants' Motion to Dismiss Plaintiffs' Fourteenth Amendment claims against Defendants Fladager, Harris, and Ferreira on the basis of prosecutorial immunity is GRANTED related to actions taken during judicial proceedings, but is DENIED where the claims relate to the involvement of Defendants in the earlier investigation; and |
| 17 | 7. Defendants' Motion to Dismiss Plaintiffs' claims under California Civil Code section 52.1 against Defendants Fladager, Harris, and Ferreira is DENIED. |

To the extent the Court has dismissed claims in the Third Amended Complaint, these claims are dismissed without leave to amend. Plaintiffs have had several opportunities to cure the defects identified above, and the Court finds that any further amendments would be futile. *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that while leave to amend shall be freely given, the court does not have to allow futile amendments).

IT IS SO ORDERED.

Dated: **September 8, 2023**

*Daniel J. Calabretta* (signature)
Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE